RECEIPT #15333
AMOUNT $ 350.00
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. C M G
DATE 9-28-06

# 06 CA 11759 RGS

## UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARVIN P. MEYER, Derivatively on Behalf )<br>of SEPRACOR INC., )<br>) <br>Plaintiff, )<br>) <br>vs. )<br>) <br>TIMOTHY J. BARBERICH, DAVID P. )<br>SOUTHWELL, WILLIAM J. O'SHEA, )<br>ROBERT F. SCUMACI, DOUGLAS E. )<br>REEDICH, PH.D., JAMES G. ANDRESS, )<br>DIGBY W. BARRIOS, JAMES F. MRAZEK, )<br>ROBERT J. CRESCI, ALAN A. STEIGROD )<br>and TIMOTHY J. RINK, )<br>) <br>Defendants. )<br>) <br>– and – )<br>) <br>SEPRACOR INC., a Delaware corporation, )<br>) <br>Nominal )<br>Defendant. )<br>———————————————————— | No.<br><br>VERIFIED SHAREHOLDER DERIVATIVE<br>COMPLAINT FOR VIOLATION OF THE<br>FEDERAL SECURITIES LAWS AND<br>STATE LAW CLAIMS FOR BREACH OF<br>FIDUCIARY DUTY, ABUSE OF<br>CONTROL, CONSTRUCTIVE FRAUD,<br>CORPORATE WASTE, UNJUST<br>ENRICHMENT, GROSS<br>MISMANAGEMENT, BREACH OF<br>CONTRACT AND ACTION FOR<br>ACCOUNTING<br><br>DEMAND FOR JURY TRIAL |

## SUMMARY AND OVERVIEW OF THE ACTION

1.      This is a shareholder derivative action on behalf of nominal Defendant Sepracor Inc.
("Sepracor" or the "Company") against its current Board of Directors and certain current top officers
for violations of federal and state law, including breaches of fiduciary duty, abuse of control,
constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a
scheme and wrongful course of conduct whereby Defendants (as defined below) allowed the
backdating of stock option grants to and for the benefit of Sepracor's directors and top executive
officers, including the Company's Chairman and Chief Executive Officer ("CEO"), Timothy J.
Barberich ("Barberich"), and/or failed to properly investigate whether these grants had been
improperly made.  Each of the Defendants also participated in the concealment of the backdating
option scheme complained of herein and/or refused to take advantage of the Company's legal rights
to require these insiders to disgorge the illicitly obtained incentive compensation and proceeds
diverted to them since at least 1998. Each of the Defendants either knew of the backdating and were
participants in the fraudulent and unlawful conduct or should have known of this conduct and done
more about it.

2.      Stock option grants give recipients a right to buy company stock at a set price, called
the exercise price or strike price.  The right usually does not vest for a year or more, but then it
continues for several years.  The exercise price is usually the stock's closing price on the date of
grant.  Obviously, the lower the exercise price, the more money the recipient can potentially make
some day by exercising the options.

3.      On May 16, 2006, the Center for Financial Research & Analysis ("CFRA") issued a
report that identified a group of companies that had a higher risk profile for options backdating.
CFRA surveyed 100 companies with the highest ratio of total stock compensation as a percentage of
their average revenue for the six years ended in December 2002.  Of those 100 companies, 17

companies, including Sepracor, had three or more option grants that appeared unusual compared to stock prices just before or after the grant date.

4.     Backdating the date of issuance of Defendant Barberich's stock option grants, among others, not only violated Sepracor's publicly disclosed stock option plans, which provided that "[a]ll options . . . will be granted at an exercise price equal to or greater than the fair market value of our common stock on the date of grant" but it also was in breach of Defendants' fiduciary duties of good faith, fair dealing and loyalty to Sepracor.

5.     Defendants' conduct has unjustly enriched Sepracor's current top executives, including Defendant Barberich, to the detriment of Sepracor and its public shareholders. A key purpose of stock options is to give recipients an incentive to improve their employer's performance, including its stock price. Backdating them so they carry a lower price runs counter to this goal, giving the recipient a "paper profit" right from the start. For example, if a company grants options on May 22, when its stock price is \$20, but records the date of issue as April 22, when the stock price was only \$15, it would be giving those who were granted options a "sure thing."

6.     Due to Defendants' conduct, Sepracor has been exposed to a costly investigation by the United States Securities and Exchange Commission ("SEC"), as well as to potential costly and expensive lawsuits for violations of the federal securities laws and accounting rules applicable to public companies. As *The Wall Street Journal* explained:

> Companies have a right to give executives lavish compensation if they choose to, but they can't mislead the shareholders about it. Granting an option at a price below the current market value, while not illegal in itself, could result in false disclosure. That's because companies grant their options under a shareholder-approved "option plan" on file with the SEC. The plans typically say options will carry the stock price of the day the company awards them or the day before. If it turns out they carry some other price, the company could be in violation of its options plan, and potentially vulnerable to an allegation of securities fraud.
>
> It could even face accounting issues. Options priced below the stock's fair value when they're awarded bring the recipient an instant paper gain. Under accounting

rules, that's equivalent to extra pay and thus is a cost to the company. A company that failed to include such cots in its books may have overstated its profits, and might need to restate past financial results.

7.     Professor Stephen Bainbridge, Professor of Corporate Law at UCLA, agrees:

There's nothing inherently illegal about either paying large compensation or even backdating an option contract, so long as proper corporate procedures were followed and the grant does not amount to a waste of corporate assets. Where public corporations are concerned, however, failure to disclose the backdating likely would constitute securities fraud. In particular, failure to do so probably would constitute a material omission with respect to the executive compensation disclosures required in the proxy statement for the corporation's annual meeting.

Stephen Bainbridge, Option Grant Timing, March 18, 2006
http:www.professorbainbridge.com/2006/03/index.html.

8.     Moreover, as a result of Defendants' conduct, the Company's proxy materials that have been filed with the SEC are false and misleading, the Company may be liable for illegal insider trading, the Company may be in violation of certain provisions of the Internal Revenue Code since it may not be able to deduct the options payments from its taxable income and the Company may need to restate its financial results for prior periods since it should have accounted for the options as a compensation expense which would reduce the Company's net income in periods prior to fiscal 2006.

9.     By this action, plaintiff seeks to recover damages and other relief against Defendants for the severe injuries their misconduct has inflicted upon Sepracor.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, and under Massachusetts law for violations of breach of fiduciary duty, abuse of control, constructive fraud, waste of corporate assets, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein,

- 3 -

Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

11. This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

12. Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Sepracor is located in and conducts its business in this District.

## THE PARTIES

13. Plaintiff Marvin P. Meyer is a current shareholder of Sepracor.

14. Nominal Defendant Sepracor is a Delaware corporation with its executive offices and principal place of business located at 84 Waterford Drive, Marlborough, MA 01752. Sepracor, a research-based pharmaceutical company, engages in the discovery, development, and commercialization of differentiated products primarily for the treatment of respiratory and central nervous system disorders in the United States.

15. Defendant Barberich has been Chairman of the Board and CEO since 1984. He also served as President of the Company from 1984 to October 1999. As Chairman of the Board of Directors and CEO, he caused or permitted the backdated stock options described herein to be granted. Defendant Barberich also personally benefited from the backdated stock options, as described herein. Moreover, because of Defendant Barberich's position, he was aware of non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects. He also had access to internal corporate documents, conversations and connections with other corporate officers and employees, and attended Board meetings. During the

relevant period, Barberich participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

16.     Defendant David P. Southwell ("Southwell") has been Executive Vice President and Chief Financial Officer ("CFO") of Sepracor since October 1995. As Executive Vice President and CFO, he caused or permitted the backdated stock options described herein to be granted. Defendant Southwell also personally benefited from the backdated stock options, as described herein. Moreover, because of Defendant Southwell's position, he was aware of non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects. He also had access to internal corporate documents, conversations and connections with other corporate officers and employees, and attended Board meetings. During the relevant period, Southwell participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

17.     Defendant William J. O'Shea ("O'Shea") has been President and Chief Operating Officer ("COO") of Sepracor since October 1999. As President and COO, he caused or permitted the backdated stock options described herein to be granted. Defendant O'Shea also personally benefited from the backdated stock options, as described herein. Moreover, because of Defendant O'Shea's position, he was aware of non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects. He also had access to internal corporate documents, conversations and connections with other corporate officers and employees, and attended Board meetings. During the relevant period, O'Shea participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

- 5 -

18.     Defendant Robert F. Scumaci ("Scumaci") has been the Company's Executive Vice President of Finance and Administration, and Treasurer since February 2001. He also served as Vice President and Controller from March 1995 to March 1996 and Senior Vice President and Treasurer from March 1996 to February 2001. As Executive Vice President of Finance and Administration, and as Treasurer, he caused or permitted the backdated stock options described herein to be granted. Defendant Scumaci also personally benefited from the backdated stock options, as described herein. Moreover, because of Defendant Scumaci's position, he was aware of non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects. He also had access to internal corporate documents, conversations and connections with other corporate officers and employees, and attended Board meetings. During the relevant period, Scumaci participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

19.     Defendant Douglas E. Reedich, Ph.D. ("Reedich") has been the Company's Chief Patent Counsel since June 1995 and its Senior Vice President since January 1999. As Chief Patent Counsel and Senior Vice President, he caused or permitted the backdated stock options described herein to be granted. Moreover, because of Defendant Reedich's position, he was aware of non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects. He also had access to internal corporate documents, conversations and connections with other corporate officers and employees, and attended Board meetings. During the relevant period, Reedich participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

20.     Defendant James G. Andress ("Andress") has been a Director of Sepracor since 1991. Defendant Andress is a member of the Company's Compensation Committee. As a member of the

- 6 -

Board of Directors and of the Compensation Committee, he caused or permitted the backdated stock options described herein to be granted. Defendant Andress also personally benefited from the backdated stock options, as described herein. Moreover, Defendant Andress knew non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Andress participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

21.     Defendant Digby W. Barrios ("Barrios") has been a Director of Sepracor since 1992. Defendant Barrios is a member of the Company's Compensation Committee. As a member of the Board of Directors and of the Compensation Committee, he caused or permitted the backdated stock options described herein to be granted. Defendant Barrios also personally benefited from the backdated stock options, as described herein. Moreover, Defendant Barrios knew non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Barrios participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

22.     Defendant James F. Mrazek ("Mrazek") has been a Director of Sepracor since 1986. Defendant Mrazek is Chairman of the Company's Compensation Committee. As a member of the Board of Directors and of the Compensation Committee, he caused or permitted the backdated stock

- 7 -

options described herein to be granted. Defendant Mrazek also personally benefited from the backdated stock options, as described herein. Moreover, Defendant Mrazek knew non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Mrazek participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

23. Defendant Robert J. Cresci ("Cresci") has been a Director of Sepracor since 1990. Defendant Cresci is the Company's Lead Director. As the Lead Director of the Board of Directors, he caused or permitted the backdated stock options described herein to be granted. Defendant Cresci also personally benefited from the backdated stock options, as described herein. Moreover, Defendant Cresci knew non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Cresci participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

24. Defendant Alan A. Steigrod ("Steigrod") has been a Director of Sepracor since 1995. As a member of the Board of Directors, he caused or permitted the backdated stock options described herein to be granted. Defendant Steigrod also personally benefited from the backdated stock options, as described herein. Moreover, Defendant Steigrod knew non-public information

- 8 -

about the business of Sepracor, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Steigrod participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

25.     Defendant Timothy J. Rink ("Rink") has been a Director of Sepracor since October 2005. As a member of the Board of Directors, Defendant Rink knew non-public information about the business of Sepracor, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Rink participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and SEC filings.

## DUTIES OF SEPRACOR'S OFFICERS AND DIRECTORS

26.     By reason of their positions as Sepracor's directors and officers, and because of their ability to control the Company's business and affairs, Defendants owed and owe Sepracor fiduciary duties of good faith, fair dealing and loyalty, and were and are required to use their utmost ability to control and manage Sepracor in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of Sepracor so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

27.     Each director and officer of the Company owes to Sepracor the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as

- 9 -

directors and/or officers of a public company, Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's financial performance and financial results so that the market price of the Company's stock would be based on truthful and accurate information. Defendants, because of their positions of control and authority as directors and/or officers of Sepracor, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their senior positions with Sepracor, Defendants, and each of them, had access to adverse nonpublic information about the unlawful stock option backdating practices and procedures described herein.

28.     At all relevant times, Defendants, and each of them, were agents of the other Defendants and of Sepracor, and were at all times acting within the course and scope of such agency.

29.     To discharge their duties, Sepracor's directors and officers were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Sepracor were required to, among other things:

(a)     prevent Sepracor's top executives from being granted backdated stock options;

(b)     prevent Sepracor's Compensation Committee from granting backdated stock options;

(c)     refrain from acting upon material inside corporate information to benefit themselves;

- 10 -

(d)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(e)     prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(g)     remain informed as to how Sepracor conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the applicable federal and state corporation and/or securities laws; and

(h)     ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

## AIDING AND ABETTING AND CONCERTED ACTION

30.     In committing the wrongful acts particularized herein, Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design. In addition to the wrongful conduct particularized herein as giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

- 11 -

31.     At all relevant times, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was over-paying its directors, officers and employees via backdated stock option grants; (ii) maintain Defendants' directorial and executive positions at Sepracor and the profits, power and prestige which Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of Sepracor, regarding Defendants' management of Sepracor's operations, the Company's financial health and stability, and future business prospects, which had been misrepresented by Defendants throughout the relevant period. In furtherance of this course of conduct, Defendants collectively and individually took the actions set forth herein.

32.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs detailed herein. In taking such actions to substantially assist the commission of the wrongdoing detailed herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

33.     Sepracor, a research-based pharmaceutical company, engages in the discovery, development, and commercialization of differentiated products primarily for the treatment of respiratory and central nervous system disorders in the United States.

34.     Since at least 1998, Sepracor, through the actions of its Board of Directors and its Compensation Committee, has granted stock options for the purchase of millions of shares of the Company's common stock to its top executives, including to many of its current directors and senior officers named as Defendants herein.

35.     In its Form 10-K filed with the SEC on or about March 16, 2006, with regard to its stock option plans, the annual report stated, in pertinent part, as follows:

- 12 -

Stock Plans

We have stock-based compensation plans, which are described below. We record the issuance of stock options using APB 25 and related interpretations in accounting for our plans.

The 1997 Stock Option Plan, or 1997 Plan, permits us to grant non-qualified stock options, or NSOs, to purchase up to 1,000,000 shares of common stock to our employees and consultants. Executive officers are not entitled to receive stock options under the 1997 Plan. NSOs granted under the 1997 Plan have a maximum term of ten years from the date of grant and generally vest over five years.

The 1999 Director Stock Option Plan, or 1999 Director Plan, permits us to grant NSOs to purchase up to 1,800,000 shares of common stock to our non-employee directors. Options granted under the 1999 Director Plan have a maximum term of ten years from the date of grant and *have an exercise price not less than the fair value of the stock on the date of grant* and generally vest over a period of one to five years.

The 2000 Stock Incentive Plan, or 2000 Plan, permits us to grant incentive stock options, or ISOs, NSOs and restricted stock awards to purchase up to 9,500,000 shares of common stock to our employees, officers, directors and consultants. Stock options granted under the 2000 Plan have a maximum term of ten years from the date of grant, *have an exercise price not less than the fair value of the stock on the grant date* and generally vest over five years. In May 2002, the stockholders approved an amendment to the 2000 Plan increasing the number of shares of common stock that could be granted under the 2000 Plan from 2,500,000 shares to 4,000,000 shares. In May 2003, the stockholders approved an amendment to the 2000 Plan increasing the number of shares of common stock that could be granted under the 2000 Plan from 4,000,000 shares to 5,500,000 shares. In May 2004, the stockholders approved an amendment to the 2000 Plan increasing the number of shares of common stock that could be granted under the 2000 Plan from 5,500,000 shares to 8,000,000 shares. In May 2005, the stockholders approved an amendment to the 2000 Plan increasing the number of shares of common stock that could be granted under the 2000 Plan from 8,000,000 shares to 9,500,000 shares.

The 2002 Stock Incentive Plan, or 2002 Plan, permits us to grant NSOs and restricted stock awards to purchase up to 4,000,000 shares of common stock to our employees, other than executive officers. Stock options granted under the 2002 Plan have a maximum term of ten years from the date of grant, *have an exercise price not less than the fair value of the stock on the grant date* and generally vest over five years. In June 2002, the Board of Directors approved an amendment to the 2002 Plan increasing the number of shares of common stock that could be granted under the 2002 Plan from 500,000 shares to 4,000,000 shares.

36.     For example, in its 2000 Stock Incentive Plan, Sepracor represented that:

The Board shall establish the exercise price at the time each Option is granted and specify it in the applicable option agreement, provided, however, that *the exercise price shall not be less than 100% of the fair market value of the Common Stock, as determined by the Board, at the time the Option is granted*.

\*       \*       \*

All options granted under the 2000 Plan will be granted at *an exercise price equal to or greater than the fair market value of the Common Stock on the date of grant*.

37.     The Company's 2000 Stock Incentive Plan defines the exercise price as:

equal to the closing price of the Company's Common Stock as reported by the Nasdaq National Market on the date of grant.

38.     Contrary to the foregoing public disclosures, the options granted under these plans were highly favorable to the option recipients because the stock options were not granted at the "fair market value" on the date of grant but were in fact backdated. In many instances, the grant dates were allegedly dated just before a sharp increase in the trading price of Sepracor stock or at the bottom of a steep drop in stock's price.

39.     The practice of backdating options at Sepracor, and many other companies, commenced prior to the passage of the Sarbanes-Oxley Act of 2002 ("Sarbanes") on July 30, 2002, when options grants did not have to be reported to the SEC until 45 days after the close of the fiscal year in which the options were granted. Sarbanes amended a section of the Exchange Act and required insiders to file notification of grants within two business days of their receipt.

40.     Defendants took advantage of the pre-Sarbanes rules to perpetrate their scheme. Prior to Sarbanes, Defendant Barberich and others caused and received several grants between 1998 and 2001 at lows in the Company's stock chart. For example:

(a)     Sepracor made thirteen separate stock option grants to Defendants Barberich, Southwell, Steigrod, Barrios, Mrazek, Andress, Cresci, two former directors and three former officers on June 4, 1998. On that date, Defendant Barberich received a grant of 300,000 options,

- 14 -

Defendant Southwell received a grant of 180,000 options, Defendant Steigrod received a grant of 35,950 options, Defendant Barrios received a grant of 2,000 options, Defendant Mrazek received a grant of 35,950 options, Defendant Andress received a grant of 2,000 options, Defendant Cresci received a grant of 2,000 options, the former directors each received grants of 2,000 options and the former officers collectively received grants of 455,000 options. On June 4, 1998, Sepracor stock closed at $18.375 per share, near the 1998 year low in the price of Sepracor common stock. Following that grant date, the price of Sepracor common stock increased sharply to end the year at 44.0625 per share. Sepracor stock traded in a range from a low of $17.5625 per share to a high of $44.3125 per share during 1998.



(b)     Sepracor made six separate stock option grants to Defendants Steigrod, Barrios, Mrazek, Andress, Cresci and a former director on May 19, 1999. On that date, Defendants Steigrod, Barrios, Mrazek, Andress, Cresci and the former director each received a grant of 20,000 options. On May 19, 1999, Sepracor stock closed at $39.06 per share, near the bottom of a sharp drop in the price of Sepracor common stock, and preceding a sharp price increase. Following that grant date, the price of Sepracor common stock increased sharply and quickly to $46.88 per share, on July 15, 1999.



(c)     Sepracor made five separate stock option grants to Defendants Barberich, Southwell, Scumaci, O'Shea and a former officer on April 27, 2000. On that date, Defendant Barberich received a grant of 125,000 options, Defendant Southwell received a grant of 75,000

options, Defendant Scumaci received a grant of 75,000 options, Defendant O'Shea received a grant

of 50,000 options and the former officer received a grant of 87,500 options. On April 27, 2000,

Sepracor stock closed at $87.31 per share, near the bottom of a sharp drop in the price of Sepracor

common stock, and preceding a sharp price increase. Following that grant date, the price of

Sepracor common stock increased sharply and quickly to $137.3906 per share, on July 6, 2000.



Sepracor
March 1, 2000 - July 3, 2000

     (d)     Sepracor made six separate stock option grants to Defendants Steigrod,

Barrios, Mrazek, Andress, Cresci and a former director on May 24, 2000. On that date, Defendants

Steigrod, Barrios, Mrazek, Andress, Cresci and the former director each received a grant of 20,000

options. On May 24, 2000, Sepracor stock closed at $87.50 per share, at the bottom of a sharp

decrease Sepracor common stock, and preceding a sharp price increase. Following that grant date,

the price of Sepracor common stock increased sharply and quickly to $137.3906 per share, on July 6, 2000.



**Sepracor**
**April 20, 2000 - June 26, 2000**

(e)     Sepracor made eleven separate stock option grants to Defendants Barberich, Southwell, Scumaci, O'Shea, Steigrod, Barrios, Mrazek, Andress, Cresci, a former director and a former officer on May 3, 2001. On that date, Defendant Barberich received a grant of 82,500 options, Defendant Southwell received a grant of 77,500 options, Defendant Scumaci received a grant of 75,000 options, Defendant O'Shea received a grant of 82,500 options and the former officer received a grant of 82,500 options. Defendants Steigrod, Barrios, Mrazek, Andress, Cresci and the former director each received a grant of 20,000 options. On May 3, 2001, Sepracor stock closed at $24.54 per share, *at the 2001 year low* in the price of Sepracor common stock. Following that grant

- 18 -

date, the price of Sepracor common stock increased sharply and quickly to as high as $59.32 per share, on December 28, 2001.



41.     As a result of the backdating of stock options issued to Defendant Barberich and Sepracor's other top insiders, Defendants have been unjustly enriched at the expense of Sepracor, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated. These windfall profits have made Defendant Barberich, as well as the other Defendants, some of the highest paid executives in their industry.

42.     Moreover, throughout the relevant period Defendants Andress, Barberich, Cresci, Mrazek, O'Shea, Reedich, Scumaci, Southwell, and Steigrod exercised many of these stock options

permitting them to sell over $258 million worth of Sepracor stock they obtained. The details of their

stock sales are set forth in the chart below:

| Name | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| ANDRESS, JAMES | 11/24/1999 | 20,000 | $48.00 | $960,000 |
| | 4/27/2005 | 8,000 | $61.00 | $488,000 |
| | 11/1/2005 | 15,000 | $55.75 | $836,250 |
| | | 43,000 | | $2,284,250 |
| | | | | |
| BARBERICH, TIMOTHY | 11/23/1999 | 224,840 | $50.26 | $11,300,458 |
| | 11/24/1999 | 39,064 | $48.20 | $1,882,885 |
| | 11/26/1999 | 36,096 | $47.75 | $1,723,584 |
| | 9/5/2000 | 16,666 | $108.23 | $1,803,761 |
| | 9/6/2000 | 59,000 | $101.18 | $5,969,620 |
| | 9/7/2000 | 50,402 | $101.15 | $5,098,162 |
| | 9/7/2000 | 50,000 | $100.66 | $5,033,000 |
| | 9/8/2000 | 23,932 | $100.94 | $2,415,696 |
| | 5/11/2004 | 300,000 | $45.85 | $13,755,000 |
| | 5/11/2004 | 46,000 | $46.48 | $2,138,080 |
| | 10/25/2005 | 75,000 | $56.48 | $4,236,000 |
| | 10/25/2005 | 45,000 | $56.75 | $2,553,750 |
| | 10/25/2005 | 35,000 | $56.80 | $1,988,000 |
| | 10/25/2005 | 27,500 | $56.54 | $1,554,850 |
| | 10/25/2005 | 25,000 | $56.55 | $1,413,750 |
| | 10/25/2005 | 25,000 | $56.77 | $1,419,250 |
| | 10/25/2005 | 15,000 | $56.85 | $852,750 |
| | 10/25/2005 | 12,500 | $56.82 | $710,250 |
| | 10/25/2005 | 10,000 | $56.50 | $565,000 |
| | 10/25/2005 | 10,000 | $56.76 | $567,600 |
| | 10/25/2005 | 10,000 | $56.85 | $568,500 |
| | 10/25/2005 | 7,500 | $56.77 | $425,775 |
| | 10/25/2005 | 2,500 | $56.51 | $141,275 |
| | 11/15/2005 | 40,000 | $56.80 | $2,272,000 |
| | | 1,186,000 | | $70,388,997 |
| | | | | |
| CRESCI, ROBERT | 3/10/1999 | 26,666 | $66.24 | $1,766,356 |
| | 2/3/2000 | 44,000 | $70.90 | $3,119,600 |
| | | 70,666 | | $4,885,956 |
| | | | | |
| MRAZEK, JAMES | 3/5/1999 | 10,000 | $65.75 | $657,500 |
| | 12/8/1999 | 6,000 | $50.50 | $303,000 |
| | 12/9/1999 | 2,600 | $49.00 | $127,400 |
| | 12/9/1999 | 2,200 | $49.22 | $108,284 |
| | 12/9/1999 | 200 | $49.19 | $9,838 |
| | 5/10/2000 | 20,000 | $102.00 | $2,040,000 |
| | 11/26/2001 | 10,000 | $47.36 | $473,600 |
| | 11/27/2001 | 20,000 | $47.78 | $955,600 |